Gabrielli, J.
(dissenting). I am compelled to cast a dissenting vote in this case, because, in my view, the result reached by the majority represents a misreading of the language and purposes of the relevant provisions of the Vehicle and Traffic Law.
The central issue in this appeal is whether an automobile leasing concern that is self-insured under subdivision 3 of section 370 of the Vehicle and Traffic Law is obliged to provide uninsured motorists coverage in accordance with the terms of subdivision 2-a of section 167 of the Insurance Law. The courts below answered the question in the affirmative and, following our grant of leave, the majority has apparently adopted the same view. I disagree.
The relevant provisions of the Vehicle and Traffic Law are as follows:
“A person, firm, or association or corporation engaged in the business of renting or leasing motor vehicles * * * shall be subject to the provisions of this section in the same manner and to the same extent as if such person, firm, association or corporation were actually engaged in the business of carrying or transporting passengers for hire.
“Notwithstanding the provisions of subdivision one of this section, a person * * * engaged in the business of renting or leasing motor vehicles, having registered in this state more than twenty-five motor vehicles * * * may file a certificate of insurance. The commissioner of motor vehicles in his discretion may * * * issue a certificate of self-insurance when he is reasonably satisfied that such person is possessed * * * of financial ability to respond to judgments” (Vehicle and Traffic Law, § 370, subd 3 [emphasis supplied]).
In other words, an automobile leasing concern having more than 25 registered vehicles must conform to the rules established for common carriers in section 370, but is excused from complying with subdivision 1 of that section if it elects to become a self-insurer and receives the necessary approvals from the Commissioner of Motor Vehicles.
*823 The provisions of section 370 governing common carriers require that such carriers fulfill their “financial security” obligations by maintaining either a bond or a policy of insurance. The special statutory duty to furnish uninsured motorists coverage is derived from subdivision 1 of section 370, which provides, in pertinent part: “Notwithstanding any contrary provision of this chapter, any such bond or policy of insurance shall also provide for uninsured motorists coverage in the minimal amount and in the form provided for in subdivision 2-a of section one hundred sixty-seven of the Insurance Law” (Vehicle and Traffic Law, § 370, subd 1, par [b] [emphasis supplied]). Inasmuch as the clear language of the statute renders automobile leasing firms exempt from the requirements of subdivision 1 if they opt to become self-insurers and inasmuch as the requirement to provide uninsured motorists coverage is derived in this case solely from subdivision 1, it would seem inescapable that self-insured leasing concerns such as appellant are not obliged to provide such coverage.
Yet, the majority has held that the uninsured motorists coverage requirement should be applied to self-insurers. Concedely, its conclusion is based in part upon the reasoning of the courts below, which relied heavily upon the recent legislative history of subdivision 1 of section 370. As Mr. Justice McCooe at the Supreme Court noted, subdivision 1 was amended in 1971 to correct a defect in the statute which permitted carriers which chose to provide financial security in the form of an indemnity bond rather than an insurance policy to avoid the obligation to furnish uninsured motorists coverage (L 1971, ch 794; see Matter of Mackey [Allcity Ins. Co.], 27 AD2d 728; NY Legis Ann, 1971, p 366). According to the court, this amendment “manifest [ed] both a judicial and a legislature intent to provide maximum coverage to an injured party”. The court further noted that the first paragraph of subdivision 3 of section 370, which governs automobile leasing firms, requires such firm to provide coverage “in the same manner and to the same extent” as firms owning vehicles for hire are required to provide. Thus, the court reasoned, “a self insurer is subject to the same requirements as a vehicle for hire” and, since the self-insurer is therefore required to provide un *824 insured motorists coverage, such coverage “ ‘is deemed included in’ the certificate of self insurance” (see Insurance Law, § 167, subd 2-a).
The fallacy in this syllogism is fairly obvious. While it is true as Justice McCooe noted that leasing concerns such as appellant are generally made subject to the rules governing owners of vehicles for hire under the first paragraph of subdivision 3 of section 370, the second paragraph of that subdivision, which establishes the option of becoming a self-insurer in the first instance, clearly exempts those who elect that option from the subdivision 1 requirements applicable to owners of vehicles for hire. Hence, it is simply incorrect to conclude, as the lower courts did, that self-insurers are subject to the same requirements as are owners of vehicles for hire.
Moreover, the language of section 370 of the Vehicle and Traffic Law itself strongly suggests that the uninsured motorists coverage requirement was not intended to be applicable to self-insurers.[1] Although such coverage must be included in any indemnity bond or policy of insurance under the terms of subdivision 1, there is no indication in the language of the statute that a similar requirement exists with respect to certificates of self-insurance. Contrary to the assertions of respondents in the instant appeal, there is no basis for assuming that the failure to include a requirement of uninsured motorists coverage in the provisions governing self-insured leasers was a mere “legislative oversight” which should be corrected under the guise of our judicial authority to construe statutes. As we noted *825 in Guercio v Hertz Corp. (40 NY2d 680, 684), self-insurance is a form of financial security which is conceptually distinct from our conventional notions of insurance. “Generally, self-insurance is no insurance at all. Rather, self-insurance, in this context, is a convenient shorthand for describing the manner in which a class of vehicle owners may comply with the requirements of the Motor Vehicle Financial Security Act. * * * The crux of the matter is that a financially able fleet owner may avoid the necessity of obtaining liability insurance and paying insurance premiums. By undertaking to assure payment of judgments, the owner does not become an ‘insured of anything other than his own ability to pay for damages for which he is legally responsible. * * * In sum, self-insurance is not insurance but an assurance — an assurance that judgments will be paid” (emphasis supplied).
Our decision in Guercio recognized that, in permitting automobile leasing firms to become self-insurers, the Legislature made a deliberate choice to exempt such firms from the usual responsibilities of motor vehicle owners in exchange for a commitment by these firms to assure payment from their own assets “for damages for which [they are] legally responsible”. Indeed, we held in Guercio that, absent a specific agreement to the contrary, a self-insured lessor would not be liable to a third party who has been injured by the negligence of one driving a leased vehicle with the lessee’s consent, although we noted that an ordinary insurer would be liable in similar circumstances by virtue of subdivision 2 of section 167 of the Insurance Law, which requires all policies of liability insurance to include such coverage. Thus, the clear implication of our holding in Guercio is that the obligations of a self-insurer under a certificate of self-insurance simply cannot be equated with the obligations of a regulated insurance company.
I find our decision in Guercio to be all but dispositive of the issue in the instant case. The omission from section 370 of the Vehicle and Traffic Law of a requirement that the self-insurer provide uninsured motorists coverage was not a mere accident resulting from legislative haste. Instead, the omission was the product of a policy choice made by the Legislature to exempt certain large automobile leas *826 ing concerns from the obligations imposed upon other vehicle owners.
A certificate of self-insurance is, in actuality, only evidence of the self-insurer’s ability to cover from its corporate assets judgments arising from its own liability. It makes no more sense to say that such a certificate of self-insurance obligates the self-insurer to provide statutory uninsured motorists coverage than it did in Guercio to say that a certificate of self-insurance gave rise to a duty on the part of the self-insurer to recompense a third party for injuries for which it was not otherwise legally liable.[2]
Accordingly, I would reverse the order of the Appellate Division and hold that appellant has no duty to provide uninsured motorists coverage by virtue of its certificate of self-insurance.
Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur; Judge Gabrielli dissents and votes to reverse in an opinion in which Chief Judge Cooke concurs.
Order affirmed, with costs, in a memorandum.

. The second paragraph of subdivision 3 of section 370 of the Vehicle and Traffic Law, which authorizes certain automobile leasing concerns to become self-insurers was enacted in 1962 (L 1962, ch 888). At that time, the statute did not include a requirement that any insurance policy or indemnification bond provide for uninsured motorists coverage. Indeed, it was not until 1971 that the Legislature amended subdivision 1 of section 370 by introducing the requirement that such coverage be provided (L 1971, ch 794). Thus, contrary to the majority’s assertions, the fact that the 1962 amendment permitting self-insurance was not intended to “ ‘result in any diminution of the protection [then] afforded to users of [rental] vehicles or to other persons’ ” (p 820, quoting Department of Motor Vehicles memorandum [emphasis supplied]) does not compel the conclusion that the self-insurance option provided in subdivision 3 of section 370 necessarily was intended to incorporate the requirement of uninsured motorists coverage, which came into existence some nine years later.

. Although the majority professes shock at the notion that a filed certificate of self-insurance does not impose upon the self-insurer the obligation to furnish “minimum coverage” (at pp 821-822), such a conclusion would seem logically to follow from our holding in Guercio v Hertz Corp (40 NY2d 680, 684) that self-insurance is nothing more than “an assurance that judgments will will be paid”.